**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| LEO DORRELL, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>CONSTELLATION ENERGY CORPORATION, *et al.*,<br><br>Defendants. | Case No. 1:25-cv-02251-ABA |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS NEXTERA ENERGY, INC., NEXTERA ENERGY RESOURCES, LLC, AND FLORIDA POWER & LIGHT COMPANY, CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Procedural Background of Litigation ........ 2

B. The Settlement Agreement ........ 3

1. The Settlement Class ........ 3

2. Monetary Relief ........ 3

3. Cooperation Requirements ........ 4

4. Release of Claims Against NextEra Defendants ........ 5

III. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT ........ 5

A. Standard for Granting Preliminary Approval ........ 5

1. The Settlement Agreement Is Fair ........ 7

2. The Settlement Agreement Is Adequate ........ 10

B. This Court Should Certify the Proposed Settlement Class ........ 12

IV. THE SETTLEMENT CLASS SATISFIES RULE 23(a) ........ 13

A. The Settlement Class Is Sufficiently Numerous. ........ 13

B. Questions of Law and Fact Are Common to the Settlement Class. ........ 13

1. Class Representatives' Claims Are Typical of the Settlement Class Members' Claims. ........ 14

2. Class Representatives Will Protect the Interests of the Settlement Class. ........ 14

3. The Requirements of Rule 23(b)(3) Are Satisfied. ........ 15

V. DEFERRING CLASS NOTICE IS APPROPRIATE IN THIS CASE ........ 21

VI. CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Cases**

*1988 Tr. for Allen Children v. Banner Life Ins. Co.*,
28 F.4th 513 (4th Cir. 2022) ....................7

*ADESSO Homeowners' Ass'n v. Holder Props., Inc.,*
No. 3:16-cv-710-JFA, 2017 WL 11272589 (D.S.C. May 23, 2017) ....................8, 9, 14

*Am. Sales Co. v. Pfizer, Inc.*,
No. 2:14cv361, 2017 WL 3669604 (E.D. Va. July 28, 2017)....................14, 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................14, 16, 20

*Brown v. Transurban USA, Inc.*,
318 F.R.D. 560 (E.D. Va. 2016) ....................12

*City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*,
270 F.R.D. 247 (D.S.C. 2010) ....................20

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*,
322 F. Supp. 3d 676 (D. Md. 2018) ....................15

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*,
375 F.2d 648 (4th Cir. 1967) ....................13

*D&M Farms v. Birdsong Corp.,*
No. 2:19-cv-463, 2020 WL 7074140 (E.D. Va. Dec. 2, 2020) ....................13, 14

*Fire & Police Retiree Health Care Fund v. Smith,*
No. CCB-18-3670, 2020 WL 6826549 (D. Md. Nov. 20, 2020) ....................6

*Gaston v. LexisNexis Risk Sols., Inc.,*
No. 5:16-cv-00009-KDB-DCK, 2021 WL 244807 (W.D.N.C. Jan. 25, 2021) ....................9

*Goodlaxson v. Mayor of Balt.*,
776 F. Supp. 3d 311 (D. Md. 2025) ....................7

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) ....................12, 14

*Hughes v. Baird & Warner, Inc.,*
No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980) ....................16

*In re Ampicillin Antitrust Litig.*,
82 F.R.D. 652 (D.D.C. 1979) ....................12

*In re Auto. Wire Harnesses*,
No. 12-md-02311, 2020 U.S. Dist. LEXIS 183483 (E.D. Mich. Sept. 30, 2020) ....................22

*In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 297 (E.D. Mich. 2001) ....................15

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ....................11

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981)....................15

*In re India Globalization Capital, Inc.,*
No. DKC 18-3698, 2020 U.S. Dist. LEXIS 77190 (D. Md. May 1, 2020)....................8

*In re IPO Sec. Litig.*,
226 F.R.D. 186 (S.D.N.Y. 2005) ....................12

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ....................6

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) .................... 5, 7, 10

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) ....................9

*In re Mid-Atlantic Toyota Antitrust Litig.*,
564 F. Supp. 1379 (D. Md. 1983) ....................6, 10

*In re PNC Fin. Servs. Grp., Inc., Sec. Litig.*,
440 F. Supp. 2d 421 (W.D. Pa. 2006) ....................8, 11

*In re Titanium Dioxide Antitrust Litig.*,
284 F.R.D. 328 (D. Md. 2012) ....................13

*In re Zetia (Ezetimibe) Antitrust Litig.,*
No. 2:18-md-2836, 2020 WL 3446895 (E.D. Va. June 18, 2020) .................... 16, 17, 19

*In re Serzone Prods. Liab. Litig.*,
231 F.R.D. 221 (S.D. W. Va. 2005) ....................8, 20

*McKinney v. U.S. Postal Serv.*,
292 F.R.D. 62 (D.D.C. 2013) ....................21

*S.C. Nat'l Bank v. Stone*,
139 F.R.D. 335 (D.S.C. 1991) ....................6, 11

*Seaman v. Duke University,*
No. 1:15-cv-462, 2018 WL 671239 (M.D.N.C. Feb. 1, 2018) ....................18, 19

*Sharp Farms v. Speaks*,
917 F.3d 276 (4th Cir. 2019) ....................10

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
890 F. Supp. 499 (E.D. Va. 1995) ....................8

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) (en banc) ....................6

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,*
No. 3:08-cv-00271, 2012 U.S. Dist. LEXIS 86474 (D.S.C. June 22, 2012) ....................*passim*

*United States v. Manning Coal Corp.*,
977 F.2d 117 (4th Cir. 1992) ....................6

*US Airline Pilots Ass'n v. Velez,*
No. 3:14-cv-00577-RJC-DCK, 2016 WL 1615408 (W.D.N.C. Apr. 22, 2016) ....................10-11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................13

**Statutes**

15 U.S.C. § 1 ....................2

**Rules**

Fed. R. Civ. P. 23 ....................*passim*

**Other**

Alba Conte & Herbert Newberg,
6 Newberg on Class Actions § 18 ....................16

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Leo Dorrell, John Dunn, and Davion Chapel (collectively, "Plaintiffs") submit this memorandum in support of their motion for preliminary approval of the proposed settlement with the following Defendants: NextEra Energy, Inc., NextEra Energy Resources, LLC, and Florida Power & Light Company (collectively, "NextEra Defendants"). This settlement agreement (the "Settlement Agreement") achieves excellent results for Plaintiffs and is attached as Exhibit A to the accompanying Declaration of George F. Farah ("Farah Decl.").

## I. INTRODUCTION

After hard-fought, arm's length negotiations by highly experienced counsel, Plaintiffs and the NextEra Defendants reached a Settlement Agreement resolving the claims of a proposed class of nuclear power generation workers employed by the Nuclear Defendants.[1] The Settlement Agreement, which was executed on May 8, 2026, secures a $9.5 million cash payment for the class and requires the NextEra Defendants to provide material cooperation to Plaintiffs in the litigation against the remaining Defendants. The NextEra Defendants compensated approximately 5.5% of

[1] The term "Nuclear Defendants" refers to the following companies: Constellation Energy Corporation; Constellation Energy Generation, LLC; Ameren Corporation; Union Electric Company; Ameren Services Company; American Electric Power Company Inc.; Indiana Michigan Power Company; American Electric Power Service Corporation; Arizona Public Service Company; Dominion Energy, Inc.; Virginia Electric & Power Company; Dominion Energy Services, Inc.; DTE Energy Company; DTE Electric Company; DTE Energy Corporate Services, LLC; Duke Energy Corporation; Duke Energy Carolinas, LLC; Duke Energy Business Services, LLC; Progress Energy, Inc.; Energy Northwest; Entergy Corporation; Entergy Operations, Inc.; Entergy Nuclear Operations, Inc.; FirstEnergy Corporation; FirstEnergy Service Company; NextEra Energy, Inc.; NextEra Energy Resources, LLC; Florida Power & Light Company; PG&E Corporation; Pacific Gas & Electric Company; Public Service Enterprise Group Inc.; PSEG Power LLC; PSEG Nuclear LLC; PSEG Services Corporation; Southern California Edison Company; The Southern Company; Southern Nuclear Operating Company, Inc.; STP Nuclear Operating Company; Tennessee Valley Authority; Vistra Corporation; Luminant Generation Company, LLC; Wolf Creek Nuclear Operating Corporation; Xcel Energy, Inc.; Northern States Power Company; and Xcel Energy Services, Inc.

the Settlement Class, making the monetary terms of the settlement extraordinary at this early stage of the litigation.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreement, (2) certifying the Settlement Class defined below, (3) appointing Interim Co-Lead Counsel as Counsel for the Settlement Class, (4) appointing Plaintiffs as Representatives of the Settlement Class, and (5) staying all proceedings against the NextEra Defendants, and enjoining the prosecution of any Released Claims against any NextEra Released Parties, except as may be necessary to implement the settlement reflected in the Settlement Agreement or comply with the terms thereof.

## II. BACKGROUND

### A. Procedural Background of Litigation

Plaintiffs allege that the Nuclear Defendants and a consulting company, Accelerant Technologies LLC, conspired and combined to fix and suppress the compensation paid to workers employed in nuclear power generation over the last twenty-three years. Plaintiffs allege that Defendants entered into two unlawful agreements in violation of the Sherman Act, 15 U.S.C. § 1: (1) a *per se* illegal agreement to fix compensation for nuclear power generation workers; and (2) an agreement to exchange competitively sensitive compensation information, in violation of the rule of reason.

This action was initiated on July 11, 2025. ECF No. 1. Plaintiffs filed the First Amended Class Action Complaint ("FAC") on November 5, 2025. ECF No. 306. Defendants moved to dismiss the FAC on December 19, 2025. *See, e.g.*, ECF Nos. 422, 427. The motions to dismiss are pending.

### B. The Settlement Agreement

Plaintiffs' counsel and counsel for the NextEra Defendants engaged in comprehensive, hard-fought settlement negotiations, informed by Plaintiffs' thorough pre-filing investigation. Farah Decl. ¶ 9, 11. Generally, the Settlement Agreement includes four important features: (1) a Settlement Class co-extensive with the operative complaint; (2) substantial monetary value to the class; (3) cooperation by the NextEra Defendants; and (4) a release that preserves the Settlement Class's ability to pursue claims against other Defendants as well as claims unrelated to the allegations in the Action.

#### 1. The Settlement Class

The Settlement Agreement was reached on behalf of a Settlement Class that is co-extensive with the litigation class alleged in the operative complaint. Specifically, the Settlement Class includes "[a]ll persons employed in nuclear power generation by the Nuclear Defendants and coconspirators, their subsidiaries, and/or related entities in the United States from May 1, 2003, until the Date of Preliminary Approval." Farah Decl., Ex. A § II(F)(3). The following persons and entities currently or formerly employed by Defendants are excluded from each Settlement Class: "human-resources executives, labor managers, human-resources managers, human-resources staff, human-resources officers, human-resources directors, and bookkeepers." *Id.*

#### 2. Monetary Relief

The proposed Settlement Agreement provides that the NextEra Defendants will pay $9,500,000 for the benefit of the Settlement Class. Farah Decl., Ex. A § II(A)(1). Importantly, the Settlement Agreement specifies that these settlement funds are non-reversionary. In other words, once the Settlement Agreement is finally approved by the Court and after the deduction of administrative costs, litigation expenses, and attorneys' fees, the net settlement funds will be

distributed to the Settlement Class, and no amount will revert back to the NextEra Defendants.

### 3. Cooperation Requirements

In addition to providing a substantial monetary payment, the Settlement Agreement obligates the NextEra Defendants to cooperate with Plaintiffs in the prosecution of their claims against the remaining Defendants, which each remain jointly and severally liable for all damages caused by the members of the alleged conspiracy. This cooperation will include, *inter alia*:

- a comprehensive verbal proffer from NextEra Defendants' counsel regarding the NextEra Defendants' knowledge of the allegations in the Complaint;
- deposition and trial testimony of seven current employees of the NextEra Defendants identified by Plaintiffs;
- the production of relevant structured compensation data;
- the production of documents from ten current or former employees of the NextEra Defendants identified by Plaintiffs;
- the production of multiple specific categories of documents, including:
    - all Compensation Comparison Reports relevant to nuclear power generation employees;
    - all documents provided to, obtained from, or included in the CBA Repository;
    - all documents distributed or discussed at NHRG meetings;
    - all WTW Surveys relevant to employment in nuclear power generation;
    - all executed final contracts with labor unions covering any Settlement Class Members employed by the NextEra Defendants during the Class Period;
    - all compensation, hiring, or recruiting policies relating to nuclear employees;
    - organizational charts depicting NextEra Defendants' nuclear power operations, human resources, labor relations, and compensation employees;
- the authentication of documents produced by the NextEra Defendants.

*See* Farah Decl., Ex. A § II(A)(2).

#### 4. Release of Claims Against NextEra Defendants

In exchange for the monetary and cooperation consideration from the NextEra Defendants, upon entry of a final judgment approving the Settlement Agreement, Plaintiffs and the Settlement Class will release and discharge the NextEra Released Parties from any and all claims arising out of or relating to "the allegations in the Action or factual predicates thereof, including an alleged or actual conspiracy or agreement between some or all Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to, the Releasing Parties," as that term is defined in the Settlement Agreement. Farah Decl., Ex. A § II(B)(2). The Release included in the Settlement Agreement covers both claims that were asserted and claims that could have been asserted.

The Settlement Agreement, however, does nothing to abrogate the rights of any member of the Settlement Class to recover from any other Defendant. The Settlement Agreement also expressly excludes from the Release claims that are both wholly unrelated to the allegations or underlying conduct alleged in this case. Farah Decl., Ex. A § II(B)(2)(a).

## III. <u>THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT</u>

### A. Standard for Granting Preliminary Approval

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Before a court may approve a proposed settlement, it must conclude that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Because the Fourth Circuit has "not enumerated factors for assessing a settlement's reasonableness," *In re Lumber Liquidators*

*Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020), this boils down to "examining [a] proposed . . . settlement for fairness and adequacy." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

Crucially, at the preliminary approval stage, the Court need not make a final determination of the merits of the proposed settlement. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983). Full evaluation is made at the *final* approval stage, after notice of the settlement has been provided to the members of the class and those class members have had an opportunity to voice their views of the settlement. *Id.*

Rather, at the preliminary approval stage, the court's role is merely "to determine whether there exists probable cause to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *Fire & Police Retiree Health Care Fund v. Smith*, No. CCB-18-3670, 2020 WL 6826549, at *2 (D. Md. Nov. 20, 2020). A court should grant preliminary approval "when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271, 2012 U.S. Dist. LEXIS 86474, at *16–17 (D.S.C. June 22, 2012) (citation omitted). "In assessing the fairness and adequacy of a proposed settlement, there is a strong initial presumption that the compromise is fair and reasonable." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (internal quotation marks and citation omitted).

When evaluating the fairness and adequacy of a proposed settlement, courts bear in mind that "[i]t has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This "strong presumption" is "especially strong in class actions

and other complex cases . . . because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (*en banc*) (citation omitted) (affirming certification of two nationwide antitrust settlement classes).

### 1. The Settlement Agreement Is Fair

A court's fairness analysis is intended primarily to ensure that a "settlement is reached as a result of good-faith bargaining at arm's length, without collusion." *See, e.g.*, *1988 Tr. for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 525–26 (4th Cir. 2022) (citation omitted). The Fourth Circuit has "identified four factors for determining a settlement's fairness, which are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of the class action litigation." *Id.* (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.,* 952 F.3d 471, 484 (4th Cir. 2020)).

The Settlement Agreement with the NextEra Defendants is fair. The first factor—*i.e.*, the posture of the case—weighs in favor of preliminary approval. The Settlement Agreement was reached after (1) more than ten months of extensive pre-filing investigation, which involved interviews with dozens of confidential witnesses, and (2) ten months of adversarial litigation, including the Parties' extensive motion-to-dismiss briefing. *See, e.g., Goodlaxson v. Mayor of Balt.*, 776 F. Supp. 3d 311, 334 (D. Md. 2025) (finding pre-discovery settlement fair where there was a "vigorous informal discovery process"). These events clarified the applicable law and legal hurdles and set the stage for the parties' positions in their settlement negotiations. *See* Farah Decl. ¶¶ 11-12.

The second factor—*i.e.*, the extent of discovery—also weighs in favor of preliminary approval. While formal discovery has not yet begun, there has been "sufficient informal discovery and investigation to fairly evaluate the merits of Defendants' positions during settlement negotiations." *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501–02 (E.D. Va. 1995). Indeed, "[d]istrict courts within the Fourth Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be deemed fair." *Temp. Servs.,* U.S. Dist. LEXIS 86474, at *32. There is "no minimum or definitive amount of discovery that must be undertaken," *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 244 (S.D. W. Va. 2005), and "[e]ngaging in formal discovery is not essential . . . or even the critical focal point of the analysis." *In re PNC Fin. Servs. Grp., Inc., Sec. Litig.*, 440 F. Supp. 2d 421, 433 (W.D. Pa. 2006). *See, e.g., In re India Globalization Capital, Inc.*, No. DKC 18-3698, 2020 U.S. Dist. LEXIS 77190 (D. Md. May 1, 2020) at *11 (preliminarily approving class action settlement before the filing of motions to dismiss and or commencement of formal discovery).

Both prior to and after filing Plaintiffs' initial detailed complaint, Plaintiffs' counsel expended considerable time and resources to conduct an extensive investigation into Defendants' conduct in setting compensation. *See* Farah Decl. ¶ 11. Plaintiffs' counsel interviewed dozens of confidential witnesses formerly employed by Defendants. *Id.* Plaintiffs' counsel also comprehensively researched both the nuclear power generation labor market and the workers that comprise the Settlement Class. *Id.* Such extensive investigative and analytical efforts support a finding of fairness. *See In re PNC Fin. Servs. Grp., Inc. Sec. Litig.*, 440 F. Supp. at 430–31; *see also ADESSO Homeowners' Ass'n v. Holder Props., Inc.*, No. 3:16-cv-710-JFA, 2017 WL 11272589, at *9 (D.S.C. May 23, 2017) ("[T]he parties have committed substantial resources to the investigation and legal analysis of the claims and defenses of the parties, to obtain sufficient

information to weigh the benefits of the proposed settlement against the risks of continued litigation.”).

The third factor—*i.e.*, the circumstances surrounding the negotiations—heavily favors preliminary approval. Where, as here, “a settlement is the result of genuine arm’s-length negotiations, there is a presumption that it is fair.” *Gaston v. LexisNexis Risk Sols., Inc.*, No. 5:16-cv-00009-KDB-DCK, 2021 WL 244807, at *6 (W.D.N.C. Jan. 25, 2021) ; *see also ADESSO*, 2017 WL 11272589, at *8 (“[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms’ length negotiations.”). Here, the parties engaged in arms-length negotiations that were hard-fought and adversarial. Those negotiations spanned more than four months, and the outcome of the negotiations is clearly not the product of collusion. *See* Farah Decl. ¶¶ 9–10.

Finally, the fourth factor—*i.e.* the experience of counsel—strongly favors preliminary approval. The lawyers who conducted these negotiations, and who have endorsed the Settlement Agreement as fair and adequate, are highly experienced and nationally recognized antitrust and class action practitioners. *See* Unopposed Mot. for Appointment of Interim Co-Lead Class Counsel, ECF No. 85; *see also* Farah Decl. ¶ 2. This “further minimizes concerns that [Plaintiffs and NextEra Defendants] colluded to the detriment of the class’s interests.” *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001). “[T]he opinion of experienced and informed counsel in favor of settlement should be afforded due consideration in determining whether a class settlement is fair and adequate.” *Gaston*, 2021 WL 244807, at *6 (citing *Jiffy Lube*, 927 F.2d at 159).

In sum, the proposed Settlement Agreement is fair. It was the product of genuine arm’s-

length negotiations by experienced counsel, and it was reached only after a far-reaching investigation of the strengths and weaknesses of the claims.

**2. The Settlement Agreement Is Adequate**

In determining whether a proposed settlement is adequate, the Fourth Circuit considers the following factors: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484.

Detailed analyses of the fourth and the fifth factors are unnecessary. This Court has held that it "places little weight upon [the fourth] factor." *In re Mid-Atlantic*, 564 F. Supp. at 1386. And with respect to the fifth factor, "[d]ue to the preliminary nature of this motion," opposition to the Settlement Agreement has not yet emerged. *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271, 2012 U.S. Dist. LEXIS 86474, at *36 (D.S.C. June 22, 2012).

"The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). Here, an evaluation of the relative strength of Plaintiffs' claims in light of the risks and costs of continued litigation supports a finding that the Settlement Agreement is adequate. Plaintiffs believe that they have presented a strong case. But this is a complex antitrust action, and the NextEra Defendants contest both the factual and legal bases for Plaintiffs' claims. It is inherently difficult to prove a complex antitrust class action, and there are "significant risks associated with continued litigation." *Temp. Servs.,* 2012 U.S. Dist. LEXIS 86474, at *35. "Regardless of the strength of a claim on the merits, one can never ensure a finding

of liability in complex litigation like this. Similarly, all parties to this litigation face significant difficulties and risks in establishing liability and defending against the claims." *US Airline Pilots Ass'n v. Velez*, No. 3:14-cv-00577-RJC-DCK, 2016 WL 1615408, at *4 (W.D.N.C. Apr. 22, 2016). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003); *see* Farah Decl. ¶ 13.

Even though the case will continue against non-settling Defendants, continuing to litigate this case against the NextEra Defendants would have required significant additional resources and increased the complexity of the case. To obtain a jury verdict against the NextEra Defendants, Plaintiffs would have needed to conduct adversarial discovery of the NextEra Defendants, litigate discovery disputes with the NextEra Defendants, defeat a motion for summary judgment filed by the NextEra Defendants, and prepare a liability case against the NextEra Defendants for trial. Courts in the Fourth Circuit have found that such circumstances (involving partial settlements in complex actions) support approval: "From the court's perspective, it is clear that pursuing the claims and potential claims against the settling defendants would add complexity, expense and delay which could postpone actual recovery for years." *In re PNC*, 440 F. Supp. 2d at 432. Another court found: "Although plaintiffs have expressed their intention to continue to pursue their claims against the non-settling defendants, many additional hours would have been required to prepare and respond to anticipated summary judgment motions, and to try the case against the settling defendants. Settlement under these circumstances clearly is appropriate." *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 340 (D.S.C. 1991).

In light of the above risk assessment, the terms of the proposed Settlement Agreement provide the Settlement Class with more than adequate relief. Under the Settlement Agreement, the

NextEra Defendants will pay $9.5 million into a settlement fund that, in due course, will provide tangible financial benefits to the Settlement Class. This settlement amount provides an excellent financial recovery considering that the NextEra Defendants only compensated approximately 5.5% of the Settlement Class. Meanwhile, the non-settling Defendants continue to be jointly and severally liable for *all* the damages caused by the alleged conspiracy.

The financial recovery from the NextEra Defendants alone would be adequate, but Plaintiffs also secured cooperation obligations to aid the prosecution of their claims against the remaining Defendants. The Settlement Agreement allows Plaintiffs to secure potentially key evidence—in the form of an attorney proffer, structured data, documents, deposition testimony, and trial testimony—from the NextEra Defendants and their employees. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re IPO Sec. Litig.*, 226 F.R.D. 186, 198–199 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants in complex class action litigation).

In sum, the proposed Settlement Agreement is adequate in the light of the strength of the claims and the risks and expense of continued litigation. Accordingly, the proposed Settlement Agreement should be preliminarily approved.

### B. This Court Should Certify the Proposed Settlement Class

Plaintiffs request that the Court certify the proposed Settlement Class to receive the benefits of the Settlement Agreement. To certify a settlement class, it must satisfy the requirements of Federal Rule of Civil Procedure 23(a) as well as one of the categories of Rule 23(b). *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 566 (E.D. Va. 2016). The Fourth Circuit practice is to "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility" that

will "'best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (quoting *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir. 1989)). Here, the proposed Settlement Class meets the prerequisites of both Rule 23(a) and Rule 23(b)(3).

## IV. THE SETTLEMENT CLASS SATISFIES RULE 23(a)

### A. The Settlement Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." Generally, classes consisting of 40 or more members are considered sufficiently large to satisfy the numerosity requirement. *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012); *see also, e.g.*, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding that a class of only 18 members satisfied the numerosity requirement). Here, Plaintiffs' counsel's extensive investigation to date indicates that hundreds of thousands of people fall within the Settlement Class definition. Rule 23(a)(1) is thus satisfied.

### B. Questions of Law and Fact Are Common to the Settlement Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim; "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation and internal quotation marks omitted). "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail." *D&M Farms v. Birdsong Corp.*, No. 2:19-cv-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 2, 2020).

Here, a central allegation in the Complaint is that Defendants, including the NextEra

Defendants, illegally conspired to suppress their employees' compensation. Proof of this alleged antitrust conspiracy will be common to all members of the Settlement Class. In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class, including, *inter alia*, the identity of the participants in the alleged conspiracy, the duration of the alleged conspiracy, and the measure of damages caused by the alleged conspiracy. *See* FAC ¶ 419, ECF No. 306. Accordingly, Rule 23(a)(2) is satisfied.

### 1. Class Representatives' Claims Are Typical of the Settlement Class Members' Claims

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "As a general matter, the 'typicality' prerequisite is satisfied in instances where plaintiffs' claims arise out of the common course of conduct of one or more defendant." *ADESSO*, 2017 WL 11272589, at *4. Typicality is "established by plaintiffs and all class members alleging the same antitrust violations by defendants." *D&M Farms*, 2020 WL 7074140, at *10 (quoting *Am. Sales Co. v. Pfizer, Inc.*, No. 2:14cv361, 2017 WL 3669604, at *11 (E.D. Va. July 28, 2017)). Here, each Plaintiff's claims and each Settlement Class member's claims arise out of a common course of misconduct by Defendants: each claims to have been paid suppressed compensation as a result of Defendants' antitrust conspiracy. As such, Rule 23(a)(3) is satisfied.

### 2. Class Representatives Will Protect the Interests of the Settlement Class

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982)). For a conflict to defeat class certification, the conflict "must be more than merely speculative or hypothetical," but rather "go to the heart of the litigation."

*Gunnells*, 348 F.3d at 430–31 (citations omitted).

Here, there is no conflict, as the interests of Plaintiffs are aligned with those of Settlement Class members. Plaintiffs, like all Settlement Class members, share an overriding interest in obtaining both the largest possible monetary recovery and most helpful cooperation from the NextEra Defendants. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.") (citation omitted). Moreover, the proposed Settlement Agreement does not afford Plaintiffs any special or unique compensation. As such, Rule 23(a)(4) is satisfied.

### 3. The Requirements of Rule 23(b)(3) Are Satisfied

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must demonstrate that the proposed Settlement Class satisfies Rule 23(b)(3). Specifically, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs have done so.

#### a. Common Issues Predominate

"Courts focus on the issue of liability to determine whether a proposed class meets the predominance prong: '[i]f the liability issue is common to the class, common questions are held to predominate over individual ones.'" *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*, 322 F. Supp. 3d 676, 685 (D. Md. 2018) (citation omitted). "[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307

(E.D. Mich. 2001) (citation omitted).

The Supreme Court has stated that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem*, 521 U.S. at 625. As this is an antitrust conspiracy case, common issues regarding the existence, scope, and effect of the alleged conspiracy, *inter alia*, predominate over individual issues. *See, e.g.*, *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers.").

Plaintiffs "are not required to prove that each element of their claims is susceptible to classwide proof, but only that 'common questions predominate over any questions affecting only individual [class] members.'" *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2020 WL 3446895, at *28 (E.D. Va. June 18, 2020) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013)). Nevertheless, Plaintiffs could use common evidence to prove each of the elements of their claims on behalf of the Settlement Class. To prevail in an antitrust case, Plaintiffs must prove three elements: (1) a violation of the antitrust laws; (2) the impact of the unlawful activity; and (3) measurable damages. *Id.* at *28.

**b. Defendants' Violations of the Antitrust Laws Are Susceptible to Common Proof**

Courts have found that the existence and scope of an antitrust conspiracy are common issues. *See, e.g.*, *id.* at *29 ("As many courts—including this one—have recognized, such evidence is common to the class, for if each member pursued its claims individually, it would rely on the same evidence to prove the alleged antitrust violations."); *see also* Alba Conte & Herbert Newberg, 6 Newberg on Class Actions § 18:26, at 18-83 to 18-86 (4th ed. 2002) ("[I]n antitrust [cases], the issues of conspiracy . . . have been viewed as central issues which satisfy the predominance

requirement.”).

Proof of Defendants’ antitrust violations would involve evidence common to all members of the Settlement Class. Plaintiffs’ allegations of compensation-fixing focus on the actions of the Defendants, rather than the actions of individual Settlement Class members, so that common issues regarding Defendants’ liability predominate. Proof common to the Settlement Class would establish the creation, scope, terms, participants, and enforcement of the alleged conspiracy, as well as acts in furtherance of it. Such evidence would come from Defendants’ own files, statements, records, and employees. In short, proof of Defendants’ antitrust violations is a common issue of sufficient importance that it alone causes common issues to predominate in this case. *See Am. Sales Co.*, 2017 WL 3669604, at *14 (“Based on this common evidence, the legal issues surrounding the antitrust violation will also be resolved uniformly across the class—whether [defendant] violated antitrust laws does not depend on any legal issue unique to a particular class member. Accordingly, Plaintiffs have proven by a preponderance of the evidence that common issues regarding the antitrust violation predominate over any individualized inquiry.”).

#### c. The Impact of the Unlawful Activity Is an Issue Common to the Settlement Class

To show antitrust impact, “there must be sufficient evidence to show that the class members suffered some damage as a result of [Defendants’] alleged antitrust violation.” *In re Zetia*, 2020 WL 3446895, at *29 (quoting *Am. Sales Co.*, 2017 WL 3669604, at *14). “But at the class certification stage,” Plaintiffs need not prove actual class-wide impact; rather, Plaintiffs “need only ‘demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members.’” *Id.* (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311–12 (3d Cir. 2008)).

At a trial, Plaintiffs would prove common impact on a class-wide basis using evidence

common to the Settlement Class. First, Plaintiffs would prove the Nuclear Defendants and co-conspirators collectively possess market power in the market for commercial nuclear power generation labor in the United States. FAC ¶¶ 375–76, ECF No. 306. Specifically, Plaintiffs would prove Nuclear Defendants and co-conspirators together control the *entire* relevant labor market, which affords them "the power . . . to profitably suppress compensation paid to nuclear power generation workers below competitive levels." *Id.* Second, Plaintiffs would prove individual nuclear power plants did *not* set compensation for Settlement Class members. Rather, decisions regarding "the compensation of nuclear power generation workers employed by the Nuclear Defendants and coconspirators were made by and at each Nuclear Defendant or coconspirator's corporate headquarters during the Class Period." *Id.* ¶ 238. Third, Plaintiffs would prove the alleged conspiracy "commonly impacted all nuclear power generation workers employed by the Nuclear Defendants and the coconspirators, their subsidiaries, and related entities in the United States because the Nuclear Defendants valued internal equity, the principle that similarly situated employees should be compensated similarly." *Id.* ¶ 383. Thus, when Nuclear Defendants aligned their compensation schedules, the alignment systematically impacted the compensation of each Settlement Class member. Fourth, Plaintiffs would prove that in the absence of the alleged conspiracy, Nuclear Defendants would have vigorously "competed with each other for labor during the Class Period by offering higher wages, higher salaries, and superior benefits to Class Members." *Id.* ¶ 252. Accordingly, Plaintiffs have demonstrated that class-wide impact is capable of common proof at trial. *See Seaman v. Duke University*, No. 1:15-cv-462, 2018 WL 671239 at *4 (M.D.N.C. Feb. 1, 2018) (holding that allegations of a compensation-suppressing conspiracy "present common questions" because of "defendants' internal equity structures").

#### d. Damages for the Settlement Class Are Measurable

No precise damages formula is required at the class certification stage. Rather, the Court's inquiry is merely limited to assessing whether methods are "available to prove damages on a class-wide basis." *In re Zetia*, 2020 WL 3446895, at *32 (citation omitted). "Assuming an appropriate model is put forth, 'the need for some individualized determinations' is not fatal to class certification." *Id.* (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015)). Multiple valid methodologies are available to prove damages in this case on a class-wide basis. For example, class-wide damages can likely be calculated using an industry benchmark model, which is an approach commonly employed in antitrust cases. The compensation paid to workers in another industry can likely be used as a yardstick to estimate the compensation that Settlement Class members would have received in the absence of the alleged conspiracy. This can generally be done using standard regression techniques that control for non-conspiratorial differences between the two industries that likely influence compensation. *See Seaman*, 2018 WL 671239, at *6–7 (holding that a regression analysis is a viable method for calculating damages in an antitrust case alleging a conspiracy to depress compensation).

#### e. Proceeding as a Class Is a Superior Method for Resolving this Dispute Fairly, Efficiently, and Effectively

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Factors relevant to the superiority of a class action include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In this case, a class action is certainly superior. The interests of Settlement Class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. There are no other pending actions raising the same allegations. Thus, the first three factors listed above are easily addressed: no class member has demonstrated any interest in litigating individually; the claims in this case are not being litigated anywhere else; and it would be enormously inefficient—for both the Court and the parties—to engage in multiple trials of the same claims asserted in multiple individual actions. "Requiring individual Class Members to file their own suits would cause unnecessary, duplicative litigation and expense, with parties, witnesses and courts required to litigate time and again the same issues, possibly in different forums." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 240 (S.D.W Va. 2005) (citation omitted).

Moreover, "the expense of individual actions, weighed against the potential individual recovery of the vast majority of class members here, would be prohibitive." *Temp. Servs.,* 2012 U.S. Dist. LEXIS 86474, at *13; *see also City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co*., 270 F.R.D. 247, 257 (D.S.C. 2010) (holding that the superiority requirement has been satisfied because "the costs associated with bringing individual actions would be prohibitive when weighed against the potential individual recoveries"). Because it would be economically unreasonable for members of the Settlement Class to adjudicate their separate claims individually, the superiority of a class action is evident. Proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit members of the Settlement Class to seek damages that would otherwise be too costly to pursue.

Finally, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S.

at 620. Here, the Settlement Agreement would obviate the need for a trial against the NextEra Defendants, and thus questions concerning that trial's manageability are irrelevant.

Accordingly, the Court should certify the Settlement Class.

## V. DEFERRING CLASS NOTICE IS APPROPRIATE IN THIS CASE

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Plaintiffs request that the Court agree to defer formal notice of the Settlement Agreement to the Settlement Class until a later date for two reasons.[2] *See McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68 (D.D.C. 2013) ("[T]he court may decide to postpone giving formal notice under Rule 23(c)(2) if there is a reason for the delay and it would not prejudice those class members who are not before the court." (quoting 7AA Charles A. Wright et al., Federal Practice And Procedure § 1788, at 530 (3d ed. 2005))). First, Plaintiffs do not yet have the names and/or contact information of Settlement Class members. The Settlement Class consists of hundreds of thousands of individuals who were employed by the Nuclear Defendants and their related entities over a period exceeding two decades. Through written discovery, Plaintiffs will request the contact information for each of those Settlement Class members from Defendants, but it will take time for Defendants to produce all such data. *See, e.g., Jien*, No. 1:19-cv-2521, ECF No. 817, at 2 (D. Md. April 3, 2023) ("Settlement Class Counsel shall submit a motion to approve a plan of notice of the

---

[2] Plaintiffs and the NextEra Defendants have agreed that the timing of a motion to provide notice to the Settlement Class of the Settlement Agreement is at the discretion of Interim Co-Lead Counsel and may be combined with notice of other settlements in this action. *See* Farah Decl., Ex. A § II(F)(5).

Settlement Agreement at an appropriate time, *i.e.* after Defendants have produced contact information regarding Settlement Class members and prior to Plaintiffs moving for final approval of the Settlement Agreement"); *McKinney*, 292 F.R.D. at 68 (deferring the issuance of class notice to allow more time for "counsel to locate more accurate information" regarding class members).

Second, each provision of notice to a class of this size incurs significant costs. Accordingly, providing separate notice to the Settlement Class each time that Plaintiffs enter into a future settlement with another Defendant would lead to inefficiencies and reduce the amount of funds available for distribution to the Settlement Class. It is thus in the best interests of the Settlement Class to combine the notice of the NextEra Defendants' settlement with notice(s) of future settlement(s) with other Defendants, should additional settlements be reached. Proceeding in this way creates attendant efficiencies and cost savings for the Settlement Class, resulting in more money from the settlements making it into the pockets of Settlement Class members. Indeed, courts often defer notice of partial settlements in complex antitrust cases until enough settlements have been reached to make the transmittal of notice cost-effective. *See, e.g., In re Auto. Wire Harnesses,* No. 12-md-02311, 2020 U.S. Dist. LEXIS 183483, at *267 (E.D. Mich. Sept. 30, 2020) (approving plan "to defer notice and the corresponding claims process until Class Counsel determined that an appropriate number of settlements occurred," which "kept expenses lower"); *In re: Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, Order (ECF No. 462) ¶¶ 3–4 (N.D. Ill. Aug. 18, 2017) (allowing plaintiffs to defer class notice of a preliminarily approved settlement until a later time).

If the Court approves Plaintiffs' request to defer notice, Plaintiffs will propose a detailed notice plan in a subsequent motion that will be filed after all the Nuclear Defendants have produced data regarding each of the identifiable Settlement Class members. The proposed notice plan will,

pursuant to Rule 23(c)(2)(B), provide the "best notice practicable" to all potential Settlement Class members who will be bound by the proposed Settlement Agreement.

## VI. CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreement, (2) certifying the Settlement Class, (3) appointing Interim Co-Lead Counsel as Co-Lead Counsel for the Settlement Class, (4) appointing Plaintiffs as Representatives of the Settlement Class, (5) deferring notice to the Settlement Class, and (5) staying all proceedings against the NextEra Defendants, and enjoining the prosecution of any Released Claims against any NextEra Released Parties, except as may be necessary to implement the Settlement Agreement or comply with the terms thereof.

Dated: August 5, 2026

Respectfully submitted,

By: /s/ *Matthew K. Handley*

Matthew K. Handley (D. Md. Bar # 18636)
HANDLEY FARAH & ANDERSON PLLC
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Telephone: (202) 559-2433
mhandley@hfajustice.com

George F. Farah (*pro hac vice*)
Nicholas J. Jackson (*pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, NY 10003
Telephone: (212) 477-8090
gfarah@hfajustice.com
njackson@hfajustice.com

William H. Anderson (*pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
1434 Spruce Street, Suite 301
Boulder, CO 80302
Telephone: (202) 559-2433
wanderson@hfajustice.com

By: /s/ *Shana E. Scarlett*
Shana E. Scarlett (*pro hac vice*)
Abby R. Wolf (*pro hac vice*)
John Michael Grant (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
abbyw@hbsslaw.com
john.grant@hbsslaw.com

Steve W. Berman (*pro hac vice*)
Breanna Van Engelen (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
breannav@hbsslaw.com

By: /s/ *Brent W. Johnson*
Brent W. Johnson (*pro hac vice*)
Daniel H. Silverman (*pro hac vice*)
Alison S. Deich (*pro hac vice*)
Sabrina Merold (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com
smerold@cohenmilstein.com

*Interim Co-Lead Class Counsel*